LAMB v. STATE.

[79 South. 849, Division B.]

1. RECEIVING STOLEN PROPERTY. *Embezzled property. Elements of defense.*

Where a defendant was indicted under section 1138 of the Code of 1906 (Hemingway's Code section 866), for receiving rights in action, or other valuable security, knowing the same to have been secreted contrary to law, he cannot be convicted by showing that when drafts drawn by him were dishonored by the payee bank, he went to its cashier and procured from him a draft drawn by it upon a third bank, but payable to the bank which had cashed drafts for defendant and delivered such draft to said last-mentioned bank.

2. CRIMINAL LAW. *Bringing defendant within statute.*

Before a defendant can be convicted of a statutory offense, the testimony must bring the defendant within the statute and this beyond all reasonable doubt.

APPEAL from the circuit court of Grenada county.
HON. H. H. ROGERS, Judge.

Oscar Lamb was convicted of knowingly and feloniously receiving from the cashier of a bank a certain draft alleged to have been unlawfully secreted by the cashier, and appeals.

The facts are fully stated in the opinion of the court.

*Powell & Mayes* and *Teat & Teat,* for appellant.

*Cowles Horton* and *Frank Roberson,* Assistant Attorney-General, for the state.

STEVENS, J., delivered the opinion of the court.

Appellant was indicted under section 1138, Code of 1906 (section 866, Hemingway's Code), for the alleged crime of knowingly and feloniously receiving from R. W.

Simpson, cashier of the Bank of Sallis, a certain draft in the sum of one thousand four hundred and ninety-six dollars and fifty cents, which it is alleged had been unlawfully secreted by the said cashier. The draft as set out in the indictment is as follows:

"Bank of Sallis, Sallis, Mississippi, 4/16/1917, No. 7698. Pay to the order of Merchants' Bank & Trust Company $1,496.50 fourteen hundred ninety-six and 50/100 dollars.

"To Bank of Commerce and Trust Company, Memphis, Tennessee.

"R. W. SIMPSON, Cashier."

The Bank of Sallis did business in Attala county, and appellant was indicted by the grand jury of Attala county. The venue upon application was changed from Attala to Grenada county, the defendant placed on trial, convicted, and sentenced to a term of ten years in the state penitentiary. The facts necessary to a proper understanding of the case are as follows:

Appellant, engaged in the general business of selling vehicles and farming instruments, began to do business with the Bank of Sallis in 1908. In 1909 the bank made him a loan. From that time until the date of the transaction complained of in the indictment the defendant Lamb did business with the bank, making deposits from time to time, drawing checks, and receiving ever-increasing accommodations from Mr. Simpson, the cashier. In 1912 the defendant moved from Sallis to Jackson, Miss., where he increased his stock of merchandise, but continued to do business with the Bank of Sallis, with which he had an active checking account, making deposits and issuing checks in the usual way. The defendant would deposit with the Bank of Sallis drafts and cash received from his customers, remit his mercantile creditors by drafts drawn upon the Bank of Sallis, and in the course of business the cashier, by paying his drafts, permitted the defendant to maintain an overdraft and to increase this overdraft from year to year until April,

1917, when this overdraft amounted approximately to fifty thousand dollars or fifty-four thousand dollars.

There is testimony tending to show that, while the Bank of Sallis had the usual board of directors, the cashier kept the books and had exclusive management of the bank's affairs. Long before the transaction complained of, and about the time the new state banking law went into effect, the cashier manipulated the books of the bank in a way to show apparently that the Oscar Lamb account was closed; but, instead of closing the account or receiving a settlement of the overdraft then existing, the cashier continued to accept Mr. Lamb's business, to honor his drafts, and to permit the overdraft to increase. There was a concealment from the board of directors and the state bank examiner of the true relationship between the defendant and the Bank of Sallis and the true condition of Mr. Lamb's account. This was accomplished by abstracting the loose-leaf sheets of the deposit accounts, and by the cashier keeping the Lamb account on loose sheets, withdrawn from the regular ledgers, and deposited to themselves in the vaults of the bank.

There is testimony tending to show that the deposits made by Lamb ran from fifty thousand dollars to seventy-five thousand dollars per annum, and that his checks would exceed his deposits from five thousand dollars to ten thousand dollars per year. After the defendant became so heavily indebted to the bank, the cashier appreciated the fact that the demands of the defendant were not consistent with good banking, and both the cashier and Lamb appreciated this fact, and had many conversations and some correspondence to the effect that, if the defendant failed in his Jackson business, the Bank of Sallis would also fail.

About April 13, 1917, the defendant drew six drafts on the Bank of Sallis in payment of claims due certain of his creditors, and deposited these six drafts with the

Merchants' Bank & Trust Company of Jackson, Miss., and received the money thereon. The defendant was then doing business under the firm name of Oscar Lamb Sales Company, and as sole owner of the business received the benefit of the proceeds. It appears that these drafts were cashed by the Merchants' Bank & Trust Company in pursuance of a letter, in the nature of a letter of credit, which the Bank of Sallis had written to the Merchants' Bank & Trust Company, and on the faith of which the Jackson bank handled the drafts. These drafts aggregated one thousand, four hundred twenty-five dollars. The drafts so drawn by the defendant were not honored, and on the failure of the Merchants' Bank & Trust Company to collect, the president of the bank at Jackson made a lively demand upon the defendant to take care of the drafts, and intimated that he intended to bring the matter to the attention of the state bank examiner. There was another small draft, which the Merchants' Bank & Trust Company then held against the Bank of Sallis, a draft drawn by one A. M. Keith for thirteen dollars and some cents. The president of the Merchants' Bank made demand upon the defendant on Saturday, and stated to him that the proceeds of these drafts would have to be in the hands of the bank at Jackson by Monday. On account of this demand the defendant drove from Jackson to Sallis in his automobile on Sunday, and on Sunday evening notified Simpson of the demands which the president of the Merchants' Bank had made, and received from Simpson the draft set out in the indictment, in the sum of one thousand, four hundred ninety-six dollars and fifty cents, and payable direct to the Merchants' Bank & Trust Company, and brought this draft through the country to Jackson and delivered it to the proper payee. The proof shows that Mr. Simpson made an error of sixty dollars in writing the draft; the amount of the draft being sixty dollars in excess of all the unpaid

drafts then held by the Merchants' Bank against the Bank of Sallis, including the one drawn by A. M. Keith.

The testimony tends to show that Mr. Simpson first agreed to mail this draft to the Jackson bank, but upon representations of the defendant that the mail would not reach Jackson before late Monday afternoon, after banking hours, the parties then agreed that Mr. Lamb should himself bring the draft back to Jackson Sunday night and deliver it in person to the Merchants' Bank early Monday morning. This draft, so issued, was drawn upon the Memphis correspondent of the Bank of Sallis, the Bank of Commerce & Trust Company, and the proceeds of the draft were used by the Merchants' Bank in taking care of the unpaid drafts of the defendant and Keith, and the excess of sixty dollars was credited back to the Bank of Sallis. It further appears that the Bank· of Sallis did not have to its credit with its Memphis correspondent a sum sufficient to take care of the draft in question, and the draft at first went to protest in Memphis. The assistant cashier of the Bank of Commerce & Trust Company then called the cashier of the Bank of Sallis over long-distance telephone, and notified him of the fact that the draft had gone to protest, and thereupon Mr. Simpson promised to send, and did send, sufficient money to make good the draft. Neither the directors nor the bank examiner was informed or knew of the issuance of the draft.

The defendant, is now indicted with the crime of knowingly receiving from the Bank of Sallis a draft which its cashier had secreted, contrary to the statute. The facts which we have outlined are facts developed by the state on the trial of the case; the defendant offering no testimony whatever.

Several alleged errors are assigned, and several points argued. It is contended by counsel for appellant that the demurrer interposed to the indictment should have been sustained, and that the motion to quash the indict-

ment should likewise have been sustained. There was
both a demurrer and a motion to quash. The motion to
quash was predicated on the showing that Mr.
Anderson, the state bank examiner, Mr. Crook,
an expert accountant, who audited the books of the bank,
and Mr. Allen, the learned district attorney, who was
himself a stockholder of the bank and to that extent
interested, were all permitted to appear in the grand
jury room at one and the same time, and in this way
develop the facts upon which the indictment was based.
The demurrer, which was overruled, submits the legal
propositions that the indictment charges no crime; that
the indictment does not. state that the draft had any
value; that the indictment does not charge that the
defendant received the draft with intent to defraud the
bank of Sallis, or to convert it to his own use; and,
further, that the indictment shows upon its face that no
property of the Bank of Sallis was secreted, either by
the cashier or by defendant. The legal propositions
raised by the demurrer are now renewed, with the
further contention that the facts proved by the state
were insufficient in law to support the verdict of guilty.
Other points, unnecessary to state, are raised and argued.

Without considering any question as to the sufficiency
of the indictment or the propriety of the court's action
in overruling the motion to quash, we are, without doubt,
led to the conclusion that the judgment appealed from
cannot be sustained, either upon the law or the facts.
The case, as made for the state, does not show any vio-
lation by the defendant of section 1138 of our present
Code. The indictment undertakes to charge that the
defendant unlawfully and knowingly received from the
cashier of the Bank of Sallis property of the bank, which
the cashier had himself unlawfully secreted. Both the
indictment and the proof show that the thing received by
the defendant was a certain draft drawn by the Bank of
Sallis upon the Bank of Commerce & Trust Company

of Memphis, and in favor of the Merchants' Bank &
Trust Company at Jackson. The real purpose for which
this draft was drawn was to provide for an obligation
which the Bank of Sallis then owed, or thought it owed,
to the Merchants' Bank at Jackson. It may be conceded
that the defendant was in equity the beneficiary of this
transaction. It is obvious, however, that the defendant
did not receive from the cashier a bond, note, or other
chose in action, of recognized value, theretofore owned
by the Bank of Sallis. In the very nature of things, it
was impossible for Mr. Simpson to secrete the draft in
question, within the meaning of the statute under review.
The draft, of course, had no value until it was issued
and delivered. So long as it remained in the hands of
Simpson undelivered it was a "mere scrap of paper."
With its delivery the cashier parted with any control
over the paper, and ownership thereby became complete
in the payee—in this instance the Merchants' Bank &
Trust Company of Jackson. Even though the testimony
shows that the defendant was doing business with the
Bank of Sallis in a clandestine fashion, the proof does
not show a failure of the cashier to make proper entry
of this draft on the books of the Bank of Sallis, so far
as its account with the Merchants' Bank & Trust Com-
pany or the Bank of Commerce & Trust Company was
concerned. As between the Bank of Sallis and either
or both of the other banks mentioned, there was no con-
cealment. The acts of Cashier Simpson in issuing and
delivering the draft, instead of being in any proper
sense an act of concealment, were acts bringing into
existence and publishing the draft. It was the act of
Simpson that created the draft, brought it into existence
as commercial paper, and placed it in circulation in due
course of business. Furthermore, the proof does not show
or intimate that Simpson received any profit in the trans-
action. It is not a case where the cashier appropriated
to his own use, or attempted to appropriate or conceal,

any property or rights in action belonging to the Bank, and, after so doing, made delivery of such property to the defendant, whose conduct is here inquired into.

Under the facts, the defendant in this case did not receive rights in action or other valuable security, knowing the same to have been embezzled or secreted, contrary to law. It is elementary that, before the judgment of conviction can be upheld, the testimony must bring the defendant within the statute, and this beyond all reasonable doubt. It is insisted that this record shows that both Simpson and Lamb were guilty of reprehensible conduct, of kiting checks, of criminal knowledge, and in short of wrecking a bank, chartered and doing business with a small capital. With all of this we have little concern in the present inquiry. The defendant is not under indictment for embezzling the money of the bank, or for wrecking the bank. The whole effort of the state to convict the defendant here rests upon one transaction—the issuance and delivery of a draft, upon the face of which the defendant is not even a party. There is no escape from the plain showing that the defendant only received and brought to Jackson a draft which was not even made payable to him, and which he could not lawfully transfer or cash. As a matter of fact, the proceeds of this draft were not paid directly to Mr. Lamb; but they were intended to go, and were in fact applied by the Merchants' Bank & Trust Company, toward the liquidation of an obligation which the Merchants' Bank then claimed against the Bank of Sallis on drafts, the benefit of which the defendant had already received. It appears to us that the object of the defendant in going to Sallis to obtain the draft, and in acting as a messenger to bring the draft back to Jackson, was to take care of an obligation which he justly owed to the Merchants' Bank & Trust Company or drafts which this bank had cashed for him, and that the diligence of the defend-

ant was prompted by an effort to prevent a crash and complete failure of his mercantile business.

It appears that Cashier Simpson was also separately indicted for the transaction here complained of, but, at the time he testified as a state witness against this defendant, no disposition had been made of his case. Under our interpretation of the facts, any inquiry into the guilt or innocence of Mr. Simpson would be improper, and any observations as to the full scope and purpose of the statute under which the defendant was indicted become unnecessary. No adjudicated case construing this particular statute has been brought to our attention.

The judgment of conviction will be reversed, and the prisoner discharged.

*Reversed.*